COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Clements and Agee
Argued at Richmond, Virginia


STEVEN BROWN

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 0522-01-2          JUDGE G. STEVEN AGEE
                                       JANUARY 29, 2002
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF BRUNSWICK COUNTY
                     Robert G. O'Hara, Jr., Judge

            Joseph E. Whitby, Jr. (Outten, Barrett,
            Sharrett & Whitby, P.C., on brief), for
            appellant.

            Susan M. Harris, Assistant Attorney General
            (Randolph A. Beales, Attorney General, on
            brief), for appellee.


     Steven Brown (Brown) was convicted in a bench trial in the

Circuit Court of Brunswick County of possession of cocaine, in

violation of Code § 18.2-250, and possession of a firearm while

in possession of cocaine, in violation of Code § 18.2-308.4.

For the two convictions, he was sentenced to serve five years

incarceration.  On appeal, he avers the trial court erred in

allowing the Commonwealth to introduce evidence of collateral

facts during the cross-examination of a defense witness.  Brown

contends the collateral evidence was not relevant and

represented impeachment by a specific act of bad conduct.  He

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

contends the trial court should not have permitted the subject cross-examination. For the following reasons we agree and reverse the decision of the trial court and remand for a new trial.

## BACKGROUND

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, only those facts necessary to a disposition of this appeal are recited.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).

So viewed, the evidence establishes that on December 14, 1999, Officer Hill of the Alberta Police Department stopped Brown's vehicle for a traffic violation. A license check revealed Brown's license was suspended. Officer Hill explained to Brown that he was being arrested for driving with a suspended license. Following the giving of the Miranda warnings, Brown agreed to a search of his car. The officer, however, informed him that the car would be towed and impounded. Brown asked if his front seat passenger could drive the vehicle instead. Rather than answer, the officer exited his cruiser and stepped

to the driver's side window of Brown's car and asked the front passenger whether he had a license. At that point, Officer Hill noticed a gun butt, sticking out from under some papers. The gun recovered was a loaded ".45, an Oscar A-80."

Brown informed the officer that the gun belonged to his girlfriend and he "had moved it from under his seat [while the officer was running the license and registration check] to the driver's console because he didn't want to get in trouble for it." Upon a further search of the vehicle, Officer Hill found "a hard, rock substance'" which was determined to be cocaine. Brown volunteered that the substance found was his.

At trial the sole issue was whether Brown knowingly possessed the gun in violation of Code § 18.2-308.4. Brown claimed he did not know the gun was in the car until Officer Hill found it but immediately recognized it as belonging to his girlfriend. He figured "she must have left it in the car." They were the "only two that drive the car." It was for that reason that "I hollered out the car and tried to tell him that it wasn't my gun it was my girlfriend's gun."

Brown's live-in girlfriend at the time of the arrest, Porcha Seward (Seward), testified as to her employment at the Lawrenceville Correctional Center and that she worked the "night just preceding [Brown's] arrest" until 7:00 a.m. on December 14, 1999. She stated that the couple shared the car and a van. She

- 3 -

remembered "driving the car on the 13th" and that Brown had not been in the car on that particular day. She continued "to have possession of the car up until the time [she] went to work."

Seward identified the gun as hers. She testified that she had the gun with her when she drove to work on December 13, and had "left it in the console" as she worked. She described pulling the lid up on the console box, putting the gun inside and closing it. She left the gun in the console "when [she] got out of the car on the morning of the 14th of December." According to Seward, she did not tell Brown that the gun was in the console and he had no reason to know it was there.

On cross-examination, Seward was asked about the Lawrenceville Correctional Center's policy "to not allow guns on their property." Brown promptly objected to the question, to which the Commonwealth's attorney responded: "it goes directly to her credibility." The Commonwealth was permitted to continue, the trial court stating: "I think it goes to her credibility."

Seward testified that in violation of her employer's policy, she transported the gun to work on the evening of December 13, 1999, "forgetting that it was in [the car] when I took it to work."

Seward's testimony was otherwise unimpeached, and no evidence was offered as to her reputation for truthfulness in

the community. Seward testified, without contradiction, that she and Brown had severed their personal relationship prior to the trial.

ANALYSIS

On appeal, the issue is whether the trial court erred in allowing the Commonwealth to conduct that part of the cross-examination of Brown's girlfriend that reflected a violation of her employer's firearms policy the night preceding Brown's arrest. Brown contends Seward's violation of policy at her place of employment was a collateral, irrelevant issue to the case and it was improper for the Commonwealth to impeach her testimony by addressing it.

The trial court possesses broad discretion regarding the examination of witnesses, and its decisions thereon can be overturned only for an abuse of discretion. See Drumgoole v. Commonwealth, 26 Va. App. 783, 787, 497 S.E.2d 159, 161 (1998). "The scope of cross-examination in general, and the extent of testimonial impeachment in particular, are left to the sound discretion of the trial court and are not subject to review unless plainly abused." Scott v. Commonwealth, 18 Va. App. 692, 693-94, 446 S.E.2d 619, 619 (1994) (citations omitted).

Brown testified that he had no knowledge of the gun's presence in his car prior to its discovery by Officer Hill. Officer Hill, however, testified that Brown, at the scene of the

traffic stop, acknowledged knowing the gun was in the car and admitted to moving the gun from under the driver's seat to the console prior to the search.  Thus, the evidence was in conflict as to Brown's knowledge of the presence of the gun in the car.

To lend credit to his version of the gun's presence, Brown called Seward as a witness.  She testified that she placed the gun in the car prior to driving the vehicle to work the night before and did not tell Brown.  Whether Seward acted as she testified was relevant to the issue of whether Brown knowingly possessed the firearm.  Yet, the Commonwealth did not employ cross-examination to attack the witness' recollection, but rather the questioning regarding an alleged prior bad act went to Seward's credibility.  To allow the Commonwealth to proceed in this fashion was error.

Evidence of specific acts of misconduct committed by a witness is generally not admissible in Virginia to impeach the witness' credibility.  Clark v. Commonwealth, 202 Va. 787, 789-90, 120 S.E.2d 270, 272 (1961).  Only when such evidence is relevant to show bias or motivation to fabricate should the evidence of specific acts of misconduct to impeach a witness be admitted.  Banks v. Commonwealth, 16 Va. App. 959, 962-63, 434 S.E.2d 681, 683-84 (1993).  Otherwise, a witness may not be cross-examined regarding any fact irrelevant to the issues on trial when that cross-examination is for the mere purpose of

impeaching his or her credibility.  *Seilheimer v. Melville*, 224 Va. 323, 326-27, 295 S.E.2d 896, 898 (1982) (citing *Allen v. Commonwealth*, 122 Va. 834, 842, 94 S.E. 783, 785-86 (1918)); *Maynard v. Commonwealth*, 11 Va. App. 437, 444, 399 S.E.2d 635, 640 (1990); see also Charles E. Friend, The Law of Evidence in Virginia § 4-3 (5th ed. 1999).

The cross-examination of Seward regarding a violation of her employer's policy was irrelevant to the issue of whether Brown knowingly possessed the firearm.  Whether Seward was aware of her employer's policy prohibiting firearms on its premises and whether she failed to comply with this prohibition was a collateral matter.  "A subject is collateral to the issues on trial unless the party cross-examining the witness is entitled to prove the subject in support of his or her own case." *Simpson v. Commonwealth*, 13 Va. App. 604, 607, 414 S.E.2d 407, 409 (1992) (citing *Seilheimer*, 224 Va. at 327, 295 S.E.2d at 898).  If a fact cannot be established for any purpose other than for contradiction, it is wholly collateral to the issues on trial.  Id.  Seward's testimony elicited on cross-examination should have been excluded.  See Clark, 202 Va. 787, 120 S.E.2d 270 (disputed examination was directly about irrelevant, independent bad acts with no nexus to the witness' bias or reliability of memory, and the trial court correctly excluded the evidence).

We are not persuaded by the Commonwealth's argument that our decision in Banks permits the disputed cross-examination. In Banks, 16 Va. App. 959, 434 S.E.2d 681, the trial court prohibited the defendant from cross-examining an undercover police officer (who had testified as a witness for the prosecution) as to the officer's alleged illegal activities during his investigation of the defendant that led to the charges at trial. We held the trial court erred in prohibiting the cross-examination as the evidence was relevant to show that the witness was biased or had a motive to fabricate his testimony. The evidence, therefore, was not a collateral issue to the trial as it went to whether the witness was biased or motivated by self-interest in the particular case. Id. at 963-64, 434 S.E.2d at 683-84. In the case at bar, there is no evidence that the cross-examination in question concerned Seward's bias or motivation to fabricate her testimony.

The evidence concerning Seward's prior bad acts was irrelevant to the issues at trial and should not have been admitted. From the record we cannot hold that the error was harmless. Seward's credibility was challenged, and we cannot say the challenge did not affect whether the trier of fact believed her direct testimony, which went to whether Brown knowingly possessed the firearm. Accordingly, we reverse

Brown's conviction and remand this matter for a new trial if the Commonwealth be so advised.

<u>Reversed and remanded.</u>